# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FATIMA MULHOLLAND, <br><br> Plaintiff, <br><br> v. <br><br> CLASSIC MANAGEMENT INC., et al., <br><br> Defendants. | CIVIL ACTION <br><br> No. 09-2525 |

Pollak, J.                                                                                           June 11, 2010

## OPINION

Plaintiff Fatima Mulholland alleges that her former employer, Classic Management Inc. ("CMI"), and three CMI managers (collectively, "defendants") fired her after she "was observed practicing her Muslim religion," Compl. ¶ 3, thereby violating (1) 42 U.S.C. § 1981, (2) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, (3) the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.*, and (4) Pennsylvania wrongful termination law. The case is now before this court on defendants' motion to dismiss the complaint (docket no. 10), which plaintiff has opposed (docket no. 12).[1]

---

[1] Defendants' motion to file a reply memorandum (docket no. 13), which document is materially responsive to plaintiff's opposition and narrows the basis for

1

Defendants assert that (1) plaintiff's 42 U.S.C. § 1981 claim is not cognizable because it is based on national origin, not race; (2) plaintiff failed to exhaust her administrative remedies as to the Title VII and PHRA claims; and (3) the wrongful termination count is both time-barred and preempted. Plaintiff concedes that her wrongful termination claim (listed as "Count VI" in the complaint[2]) is subject to dismissal, *see* Resp. in Opp'n at 8, and that count will accordingly be dismissed. I consider defendants' remaining arguments in turn.[3]

## I.

In order to survive a motion to dismiss for failure to state a claim, a complaint need only include "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," "detailed factual allegations" are unnecessary. *Twombly*, 540 U.S. at 555.

---

defendants' motion, will be granted.

[2] Although the complaint includes only four counts, the section 1981 claim is numbered as "Count I," the Title VII claim as "Count II," the PHRA claim as "Count V," and the wrongful termination claim as "Count VI."

[3] Initially, defendants also argued that the section 1981, Title VII, and PHRA claims were untimely. Their reply brief, however, withdraws these arguments, *see* Defs.' Reply Mem., at 1 n.1, and I consequently will not consider them.

Rather, plaintiffs must simply include enough facts to "state a claim to relief that is plausible on its face." *Id.* at 570.

In reviewing a 12(b)(6) motion, "the facts alleged [in the complaint] must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "[R]easonable inferences" are also drawn in favor of the plaintiff, *id.*, but this court need not "'accept as true a legal conclusion couched as a factual allegation,'" *Twombly*, 550 U.S. at 555.

## II.

Plaintiff's section 1981 claim alleges that the defendants "treat . . . employees [unequally] because of their gender, religion, and first amendment activities," and "deprived Plaintiff of employment and employment opportunity and equal protection of law by firing her for her religion and national origin." Compl. ¶ 22. The complaint further alleges that CMI "has a policy[,] practice[,] or custom . . . [to] deny and/or chill . . . [the] constitutional rights of its employees or persons of the Muslim faith or from Morocco." *Id.* ¶ 23. Defendants argue that this count "is deficient as a matter of law because Section 1981 claims cannot be based on national origin or religion," but only "on race." Mem. in Supp., at 8.

42 U.S.C. § 1981 provides in pertinent part as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

This language does not only protect plaintiffs who are discriminated against based on their race, as that term is understood today; rather, the Supreme Court has held that "Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Thus, if a plaintiff "can prove that [she] was subjected to intentional discrimination based on the fact that [she] was born [into a particular ethnic group], rather than solely on the place or nation of [her] origin, or [her] religion, [she] will have made out a case under § 1981." *Id.* Justice Brennan's *Al-Khazraji* concurrence stressed that "the line between discrimination based on ancestry or ethnic characteristics . . . and discrimination based on place or nation of . . . origin . . . is not a bright one." *Id.* at 614 (Brennan, J., concurring) (internal quotation marks and citations omitted). "I therefore," Justice Brennan concluded, "read the Court's opinion to state only that discrimination based on *birthplace alone* is insufficient to state a claim under § 1981." *Id.* (emphasis in original).

The Third Circuit has suggested – but not squarely ruled – that a claim that "rest[s] solely on [the plaintiff's] national origin . . . would not be sufficient for a § 1981 claim under *Al-Khazraji*." *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 172 (3d Cir. 1991).

4

District courts in this circuit have, meanwhile, hewed closely to the distinction suggested by Justice Brennan's concurrence, dismissing § 1981 claims based (1) solely on national origin, or (2) on national origin and other non-protected characteristics, while permitting claims based on national origin *and* race, ethnicity, or ancestry to proceed. *See, e.g.*, *Youssef v. Anvil Int'l*, 595 F. Supp. 2d 547, 558-59 (E.D. Pa. 2009); *Beaubrun v. Inter Cultural Family*, No. 05-cv-6688, 2006 WL 1997371, at *4-*5 (E.D. Pa. July 13, 2006) (dismissing a national origin claim and citing other cases); *Wallace v. Graphic Mgmt. Assocs., Inc.*, No. 04-cv-819, 2005 WL 527112, at *3 (E.D. Pa. Mar. 3, 2005); *Schouten v. CSX Transp., Inc.*, 58 F. Supp. 2d 614, 617-18 (E.D. Pa. 1999); *King v. Twp. of East Lampeter*, 17 F. Supp. 2d 394, 417 (E.D. Pa. 1998).[4]

I agree with the view in these cases that section 1981 claims based on national origin *plus* ethnicity or ancestry or race are cognizable, whereas claims based on national origin alone or national origin plus other unprotected categories are not. That view is entirely consistent with the holding and language of *Al-Khazraji*, with Justice Brennan's concurrence, and with the Third Circuit's *dictum* in *Bennun*.[5] Moreover, while plaintiff

---

[4] *Abdulhay v. Bethlehem Med. Arts, L.P.*, No. 03-cv-4347, 2004 WL 620127, at *5 n.35 (E.D. Pa. Mar. 29, 2004), states that "[t]here is no basis for the . . . defendants' assertion that plaintiff['s] Section 1981 claim should be dismissed because plaintiffs aver the discrimination occurred because of [an individual's] national origin." *Abdulhay*, however, is not at odds with the cases cited above, because the plaintiffs in that case brought their section 1981 claims on the basis of "racial, national origin, and ethnic bias," not on the basis of national origin alone. *Id.*

[5] A post-*Bennun* non-precedential Third Circuit disposition does appear to hold that a plaintiff alleging discrimination "because he is a native of India"

5

finds what she contends is support in the Third Circuit's opinion in *Al-Khazraji* (which was, of course, the precursor to the Supreme Court's *Al-Khazraji* opinion), the portion of that opinion that plaintiff highlights simply notes that the omission of the word "race" from a complaint is not dispositive when "plaintiff's position from the outset has been that he was subject to disparate treatment because of national origin, religion, and/or race." *Al-Khazraji v. St. Francis Coll.*, 784 F.2d 505, 508 n.4 (3d Cir. 1986), *aff'd*, 481 U.S. 604 (1987). This holding is in no way inconsistent with the view that national origin alone cannot ground a section 1981 claim. The remaining task, then, is to determine on which side of the line plaintiffs' allegations fall.

The facts in plaintiffs' complaint include nothing to suggest that plaintiff is claiming discrimination on the basis of anything other than (1) national origin, (2) religion, (3) gender, and (4) "first amendment activities." As quoted above, the paragraphs directly characterizing the § 1981 claim expressly and exclusively refer to "national origin" (then recast as being "from Morocco") and "religion" (then restated as being "of the Muslim faith"). Compl. ¶¶ 22-23. Similarly, the introductory paragraph states that plaintiff is "a female . . . Moroccan naturalized United States citizen of the Muslim religion." *Id.* ¶ 1; *see also id.* ¶ 4 ("a female, naturalized [U]nited [S]tates citizen

---

"establish[ed] a *prima facie* claim of discrimination" under section 1981. *Bhatt v. Brownsville Gen. Hosp.*, 236 F. App'x 764, 766 (3d Cir. 2007). The district court opinion in *Bhatt*, which the Third Circuit affirmed, nevertheless makes clear that the plaintiff's § 1981 claim did, in fact, "present[] . . . claims of racial discrimination." *Bhatt v. Brownsville Gen. Hosp.*, No. 03-cv-1578, 2006 WL 167955, at *17 (W.D. Pa. Jan. 20, 2006) (Hardiman, J.). *Bhatt* is thus not inconsistent with *Bennun* or *Al-Khazraji*.

6

from Morocco, and Muslim"). The Title VII and PHRA claims also include substantively similar allegations in describing the plaintiff. *See id.* ¶ 26 ("female, employee and person who practices the Muslim faith"), ¶ 28 ("employment opportunities enjoyed by other female non-Muslim employees"). Finally, the factual background section of the complaint only notes plaintiff's "Muslim religion." ¶¶ 11, 20. Thus, all of the factual allegations in the complaint focus on the plaintiff's national origin, religion, and gender, without regard to her race or ethnicity.

There are nevertheless four instances in which the complaint uses the word "race." Three times, the complaint references CMI's alleged "policy to engage in [the] illegal employment practice of discriminating against employees in the terms and conditions of employment because of gender, *race*, national origin and religion." *Id.* ¶ 30 (emphasis supplied); *see also id.* ¶ 6 (describing the individual defendants as "aider[s] and abettors of [CMI's] policy to discriminate in employment opportunities because of race or religion"); ¶ 35 ("the employer's illegal employment practice to discriminate . . . because of sex, gender, race, religion and national origin"). These invocations of the word "race," however, appear in the middle of boilerplate legal allegations concerning the relationship between CMI and the individual defendants, without any reference to plaintiff or to her particular claim. Therefore, these allegations do not suggest that Mulholland is claiming that she was discriminated against because of her race.

The final reference to race in the complaint, meanwhile, alleges that a "fail[ure] to

7

properly or adequately train or supervise [CMI's] employees . . . caused the Plaintiff's damages and [caused her] to . . . be subjected to illegal employment discrimination because of her race, religion and opposition to illegal employment discrimination." *Id.* ¶ 7. Unlike the three paragraphs concerning CMI's alleged policy of racial discrimination, this paragraph does allege discrimination against the plaintiff based on race. Nevertheless, it constitutes nothing more than the legal conclusions that CMI negligently supervised and trained its employees; like the rest of the complaint, it includes no factual allegations describing any racial discrimination against the plaintiff. This allegation is therefore of the sort that may, pursuant to the Supreme Court's decision in *Twombly*, be disregarded. Thus, because the allegations specific to the section 1981 claims and all of the relevant factual allegations in the complaint focus on national origin, religion, and gender, to the exclusion of race or ethnicity, this court reads the complaint to allege discrimination against the plaintiff on the bases of national origin, religion, and gender. Accordingly, because "[t]he scope of § 1981 is not so broad as to include disparity in treatment on the basis of" those three categories, *King*, 17 F. Supp. 2d at 417, plaintiff's § 1981 claim will be dismissed.

### III.

Defendants argue that the Title VII and PHRA claims must be dismissed because they were not fairly encompassed within plaintiff's EEOC charge. *See* Mem. in Supp., at 12-15. It is true that "[b]efore bringing suit under Title VII in federal court, a plaintiff

8

must first file a charge with the EEOC." *Webb v. City of Phila.*, 562 F.3d 256, 262 (3d Cir. 2009). The PHRA likewise "require[s] pursuit of administrative remedies before a plaintiff may file a complaint in court." *Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999). "[T]he parameters of the civil action in [this] court are" therefore "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976). In particular, I must determine "'whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.'" *Demshick v. Del. Valley Convalescent Homes, Inc.*, No. 05-cv-2251, 2007 WL 1244440, at *12 (E.D. Pa. Apr. 26, 2007) (quoting *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)).

Plaintiff's EEOC charge, which was attached to defendants' motion,[6] reveals that plaintiff checked the boxes stating that CMI discriminated against her on the basis of her age and religion. Mem. in Supp., Ex. A, at 2. In the narrative portion of the form, plaintiff alleged that "a younger non Muslim female with lesser experience and education" was selected for a managerial position instead of plaintiff. *Id.* Plaintiff further stated that CMI "[d]id not like [her] 'accent'" and that, although CMI told her it

---

[6] Consideration of the charge does not require converting defendants' motion into one for summary judgment. The charge is referenced in and relied upon by the complaint, and therefore may be considered on a motion to dismiss pursuant to Rule 12(b)(6). *See Pension Ben. Guar. Corp. v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993).

9

was terminating her "because of insubordination," possibly because she "did not personally report [a sick day] to [her] immediate supervisor but . . . left a message with someone else," "other non arabic employees abus[ed] their sick leave [without] being terminated." *Id.* She then reiterated that she thought she had "been terminated because of [her] religion (Muslim) and age." *Id.*

Defendants argue that plaintiff's EEOC charge was exclusively based on age and religion discrimination, and that claims of (1) retaliation, (2) national origin discrimination, and (3) sex discrimination do not fairly fall within its scope. *See* Mem. in Supp., at 12-15.

Defendants are correct that a retaliation claim is not fairly within the scope of the EEOC charge. In her complaint, plaintiff alleges that she "complained to her superior of the discriminatory conduct and [CMI] . . . retaliated against the Plaintiff by terminating her employment." Compl. ¶ 29. In other words, her retaliation claim – like her allegations of discrimination – rests solely on her termination. Her EEOC charge, however, states CMI's proffered reasons for plaintiff's termination without including any allegation that plaintiff had engaged in pre-termination activities that were protected from retaliation by Title VII or the PHRA, let alone that her termination was caused by protected activities. Nor did plaintiff check the "retaliation" box on the form. Accordingly, she has not exhausted her retaliation claim, and the Title VII and PHRA counts in the complaint will be dismissed insofar as they allege illegal retaliation. *See,*

*e.g.*, *Johnson v. Chase Home Fin.*, 309 F. Supp. 2d 667, 671-72 (E.D. Pa. 2004) (holding that an EEOC charge alleging "discrimination as well as [a] hostile work environment" could not be fairly construed to include a retaliation claim).

The charge also does not include anything to suggest that plaintiff was discriminated against because of her sex. In fact, the only mention of sex or gender in the charge occurs when plaintiff mentions the "younger non Muslim female" who was made a manager – which is to say that the only mention of sex or gender suggests that plaintiff was *not* discriminated against on that ground. Mem. in Supp., Ex. A, at 2. In short, "[n]othing in [plaintiff's] EEOC claim incorporated sex discrimination, or provided any indication to the EEOC that its investigation should encompass such a claim." *Webb*, 562 F.3d at 263. For that reason, the Title VII and PHRA claims will also be dismissed insofar as they allege sex discrimination.

At first blush, there also seems to be no reference to plaintiff's national origin in the EEOC charge. The relevant box is not checked, and there is no mention of the fact that plaintiff was born in Morocco. Moreover, while the charge does contain references to plaintiff's Arabic origin and accent, these references are perhaps best interpreted as references to her race or ethnicity, not her national origin. *See Al-Khazraji*, 481 U.S. at 613 (differentiating between "discrimination based on the fact that [plaintiff] was born an Arab" and discrimination "solely on the place of national origin").

Nevertheless, "[a] plaintiff's EEOC charge must not be read too narrowly, and

11

courts must 'keep in mind that charges are drafted by one who is not well versed in the art of legal description.'" *Paige v. Crozier Chester Med. Ctr.*, No., 2009 WL 533068, at *5 (E.D. Pa. Mar. 3, 2009) (quoting *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 965 (3d Cir. 1978)). The "'scope of the original charge,'" in other words, "'should be liberally construed.'" *Id.* (quoting *Hicks*, 572 F.2d at 965). Because, as Justice Brennan recognized, "the line between discrimination based on ancestry or ethnic characteristics . . . and discrimination based on place or nation of . . . origin . . . is not a bright one," *Al-Khazraji*, 481 U.S. at 614 (Brennan, J., concurring) (internal quotation marks and citations omitted), there is particular reason not to draw fine distinctions between race, ethnicity, and national origin when interpreting the scope of an EEOC charge. Broadly construed, plaintiff's references to her Arabic heritage and accent could lead questions of national origin discrimination to be "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol*, 82 F.3d at 1295. Accordingly, defendants' motion to dismiss will be denied insofar as it concerns the aspect of Mulholland's Title VII and PHRA claims that deals with national origin discrimination.[7]

---

[7] If the discovery process reveals that such allegations were not fairly within the EEOC complaint and investigation, defendants may, of course, reassert this argument in a summary judgment motion. In this regard, I note that although plaintiff's memorandum in opposition alleges facts concerning the EEOC investigation, *see* Resp. in Opp'n, at 6-7, these facts are not set forth in the complaint. I therefore do not consider these facts in reaching a decision on defendants' motion. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotation marks omitted).

Finally, I note that both the EEOC charge and the complaint in this case allege discrimination on the basis of religion, and defendants do not argue otherwise. Dismissal of the Title VII and PHRA claims would therefore also be improper insofar as those claims allege discrimination on the basis of religion.[8]

In sum, then, the Title VII and PHRA counts (listed as Counts II and V in the complaint) may proceed on the bases of (1) religion and (2) national origin, but these counts will be dismissed insofar as they allege (1) discrimination on the basis of sex, and (2) retaliation.

### IV.

For the foregoing reasons, defendants' motion to dismiss the complaint will be granted as to (1) the claim arising under 42 U.S.C. § 1981, (2) the wrongful termination count, and (3) the Title VII and PHRA claims, insofar as those claims allege (a) retaliation, and (b) sex discrimination. Defendants' motion will be denied insofar as the Title VII and PHRA claims allege discrimination on the basis of (1) religion, and (2) national origin. An appropriate order accompanies this opinion.

---

[8] On the other hand, while the EEOC charge alleges discrimination on the basis of age, the complaint does not.